# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DAN MEAD and JENNIFER MEAD,

        Plaintiffs,

v.

ROCKFORD PUBLIC SCHOOL DISTRICT and ROCKFORD PUBLIC SCHOOLS' BOARD OF EDUCATION,

        Defendants.

Case No. 1:23-cv-01313

Hon. Paul L. Maloney

Mag. Ray Kent

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**\*\*ORAL ARGUMENT REQUESTED\*\***

Table of Contents

Page

Introduction ...........................................................................................................................1

Argument ..............................................................................................................................1

I.  Plaintiffs have not plausibly alleged a violation of a fundamental parental right. ..................................................................................................................1

    A.  Plaintiffs have not plausibly alleged that Rockford infringed on their fundamental right to direct their child's education or upbringing. ...........................................................................................2

    B.  Plaintiffs have not plausibly alleged that Rockford violated their fundamental right to direct their child's medical care. ............................4

    C.  Plaintiffs' claim of concealment does not alter the analysis. ................7

II.  Plaintiffs' Free Exercise Claim fails as a matter of law. .........................................8

    A.  Plaintiffs do not plausibly alleged that Rockford's policy burdened their religious exercise. ......................................................8

    B.  Even if Plaintiffs had alleged a burden, Rockford's policy is neutral and generally applicable. .........................................................11

    C.  The Sixth Circuit has rejected the hybrid rights theory. .......................12

III.  Plaintiffs' Procedural Due Process claim fails as a matter of law. ..................12

IV.  Plaintiffs' claims fail under any standard of review. .........................................13

Conclusion ...........................................................................................................................14

Index of Authorities

Page(s)

**Cases**

*Anspach ex rel. Anspach v. City of Philadelphia*,
    503 F.3d 256 (3d Cir. 2007) ..................................................................................1, 2

*Blau v. Fort Thomas Pub. Sch. Dist.*,
    401 F.3d 381 (6th Cir. 2005) ..........................................................................1, 3, 4, 13

*Bowen v. Roy*,
    476 U.S. 693 (1986) ..........................................................................................8

*C.N. v. Ridgewood Bd. of Educ.*,
    430 F.3d 159 (3d Cir. 2005) ..................................................................................1

*Country Mill Farms, LLC v. City of East Lansing*,
    No. 1:17-CV-487, 2023 WL 5345236 (W.D. Mich. Aug. 21, 2023) ..............................10, 11

*Dahl v. Board of Trustees of Western Michigan University*,
    15 F.4th 728 (6th Cir. 2021) ..............................................................................9, 10

*Deanda v. Becerra*,
    645 F. Supp. 3d 600 (N.D. Tex. 2022) ....................................................................6

*Doe v. Delaware Valley Reg'l High Sch.*,
    No. CV2400107GCJBD, 2024 WL 706797 (D.N.J. Feb. 21, 2024) ....................................5

*Doe v. Irwin*,
    615 F.2d 1162 (6th Cir. 1980) ..........................................................................2, 6, 12

*Foote v. Town of Ludlow*,
    No. CV 22-30041-MGM, 2022 WL 18356421 (D. Mass. Dec. 14, 2022) ..........................4, 5

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021) ........................................................................................11

*Ginsberg v. New York*,
    390 U.S. 629 (1968) ..........................................................................................2

*Hodgson v. Minnesota*,
    497 U.S. 417 (1990) ..........................................................................................3

*Kanuszewski v. Michigan Department of Health & Human Services*,
    927 F.3d 396 (6th Cir. 2019) ..............................................................................5, 6

*Kissinger v. Bd. of Trustees of Ohio State Univ., Coll. of Veterinary Med.*,
    5 F.3d 177 (6th Cir. 1993) ...................................................................................................11

*Leebaert v. Harrington*,
    332 F.3d 134 (2d Cir. 2003)...................................................................................................3

*Mahmoud v. McKnight*,
    --F. Supp. 3d--, No. CV DLB-23-1380, 2023 WL 5487218
    (D. Md. Aug. 24, 2023)..........................................................................................................8

*Mirabelli v. Olson*,
    No. 323CV00768BENWVG, 2023 WL 5976992 (S.D. Cal. Sept. 14, 2023).........................13

*Mozert v. Hawkins Cnty. Bd. of Educ.*,
    827 F.2d 1058 (6th Cir. 1987) ............................................................................................7, 9

*Parker v. Hurley*,
    514 F.3d 87 (1st Cir. 2008)............................................................................................2, 3, 8

*Pleasant View Baptist Church v. Beshear*,
    838 F. App'x 936 (6th Cir. 2020) .........................................................................................11

*Reno v. Flores*,
    507 U.S. 292 (1993)..............................................................................................................13

*Ricard v. USD 475 Geary Cnty.*,
    No. 522CV04015HLTGEB, 2022 WL 1471372 (D. Kan. May 9, 2022)...............................13

*Sch. Dist. of Abington Twp. v. Schempp*,
    374 U.S. 203 (1963)................................................................................................................7

*SFS Check, LLC v. First Bank of Delaware*,
    774 F.3d 351 (6th Cir. 2014) .................................................................................................4

*T.F. v. Kettle Moraine Sch. Dist.*,
    No. 2021 CV 1650, 2023 WL 6544917 (Wis. Cir. Ct., Oct. 3, 2023) .....................................5

*Willey v. Sweetwater County School District*,
    680 F. Supp. 3d 1250 (D. Wyo. 2023)....................................................................................7

*L.W. ex rel. Williams v. Skremetti*,
    83 F.4th 460 (6th Cir. 2023) ..................................................................................................6

*Yoder v. Wisconsin*,
    406 U.S. 205 (1972)......................................................................................................2, 3, 8

**Introduction**

Plaintiffs ask this federal court to wade into a political debate on the matter of gender identity, and transform the question from one of policy to one of constitutional mandate. But neither the Supreme Court nor the Sixth Circuit has held that the Constitution requires a school to immediately inform parents of any decision that might conflict with the parents' own religious or moral beliefs. Instead, the courts have long held that parents' fundamental right to direct the education and upbringing of their children, religious and otherwise, is neither absolute nor unqualified. Schools must balance the rights of the minors, the parents, as well as the State. The State Board of Education's Guidance strikes that balance, and Rockford, with notice to the Meads, adopted that policy. None of the Meads' constitutional rights have been violated.

**Argument**

**I.    Plaintiffs have not plausibly alleged a violation of a fundamental parental right.**

For strict scrutiny to apply, a government action must infringe on a "fundamental right"—a "short list" of rights that "the Supreme Court has expressed very little interest in expanding." *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 393-94 (6th Cir. 2005). But Plaintiffs intend to add to that list a sweeping expansion that has no foothold in the law. Plaintiffs assert: "Regarding education, healthcare, *or any other topic*, parents have 'a fundamental right to *make decisions*' on behalf of their children." (ECF No. 21, PageID.144) (emphasis added to "or any other topic"). As in *Blau*, this Court should be reluctant to expand fundamental parental rights this broadly "because guideposts for decision making in this unchartered area are scarce and open-ended." *Blau*, 401 F.3d at 395.

Plaintiffs ignore the federal courts' consistent emphasis that parents' fundamental rights are "neither absolute nor unqualified." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 182 (3d Cir. 2005); *Anspach ex rel. Anspach v. City of Philadelphia*, 503 F.3d 256, 261 (3d Cir. 2007)

1

(noting "the parental right is not absolute").  Plaintiffs also ignore that children possess constitutional rights to make their own decisions.  *Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980) (recognizing minors' constitutional right to obtain contraceptives); *Anspach*, 503 F.3d at 261 (finding "parental rights must be balanced with the child's right to privacy, which is also protected under the Due Process clause").  Plaintiffs likewise disregard the state's substantial and "independent interest in the health and welfare of its youth." *Irwin*, 615 F.2d 1162 (quoting *Ginsberg v. New York*, 390 U.S. 629, 640 (1968)).

> **A.     Plaintiffs have not plausibly alleged that Rockford infringed on their fundamental right to direct their child's education or upbringing.**

Relying on *Yoder v. Wisconsin*, 406 U.S. 205, 233 (1972), Plaintiffs argue that, by agreeing to F.M.'s request to use his preferred name and pronouns without their consent, Rockford infringed upon their "fundamental right to decide aspects of [their child's] life like the 'moral standards' and 'religious beliefs' that would guide her education." (ECF No. 21, PageID.146).  *Yoder* did not establish such a right.  *Yoder* prohibited the state from compelling Amish parents to send their children to high school when doing so constituted "a very real threat of undermining the Amish community and religious practice as they exist today; they must either abandon belief and be assimilated into society at large, or be forced to migrate to some other and more tolerant region." *Yoder*, 406 U.S. at 218.  Plaintiffs' allegations fall far short of alleging such a threat.  As the First Circuit explained in *Parker v. Hurley*, 514 F.3d 87, 100 (1st Cir. 2008), "*Yoder* emphasized that its holding was essentially *sui generis*, as few sects could make a similar showing of a unique and demanding religious way of life that is fundamentally incompatible with *any* schooling system." *Id.* (emphasis in *Parker*).  *Yoder* does not suggest that a public school must obtain consent from parents before making any decision that might conflict with parents' "moral standards" or "religious beliefs." *Yoder*, 406 U.S. at 233.

Stretching the boundaries of fundamental parental rights beyond any recognizable guideposts, Plaintiffs argue that they "have a fundamental right to the information they need to make decisions for their [child]," and, at a minimum, the right to be notified. (ECF No. 21, PageID.152 (emphasis added)). For this principle, Plaintiffs quote from Justice Kennedy's concurring and dissenting opinion in *Hodgson v. Minnesota*, 497 U.S. 417 (1990), but *Hodgson* does not establish the right to be notified. *Hodgson* dealt with parental rights in the distinguishable context of the state providing abortion services to minors. Justice Kennedy's concurrence discussed generally parental rights at common law and likewise acknowledged limitations on those rights. *Id.* at 483. Multiple federal courts—including the Sixth Circuit—have held that parents do *not* have a constitutional right to be notified. (*See* ECF No. 13, PageID.96, 98-101 (discussing cases)).

Plaintiffs also argue that Rockford's interpretation of *Blau* nullifies *Meyer*, *Pierce*, and *Yoder*." (ECF No. 21, PageID.155). That is wrong. The Sixth Circuit's decision in *Blau* recognized that parents "may have a fundamental right to decide *whether* to send their child to public school," but "do not have a fundamental right generally to direct *how* a public school teaches their child." *Id.* at 394-95; *see also* 395-96 (collecting cases). Consistent with *Blau*, as federal circuit courts have recognized: "*Meyer*, *Pierce*, and their progeny do not begin to suggest the existence of a fundamental right of every parent to tell a public school what his or her child will and will not be taught." *Parker v. Hurley*, 514 F.3d 87, 102 (1st Cir. 2008) (quoting *Leebaert v. Harrington*, 332 F.3d 134, 141 (2d Cir. 2003)).

Plaintiffs argue that, if Rockford's characterization of the scope of parents' fundamental rights were correct, then schools would not need to inform parents about "critical issues like attendance or academic performance that fall within 'school operations.'" (ECF No. 21,

3

PageID.155). As a matter of policy and to comply with state law, public schools like Rockford regularly communicate with parents about issues like attendance and academic performance. But no federal court has ever suggested that schools have a *constitutional obligation* to notify parents whenever their child earns a bad grade or is late for class. This Court should not expand the concept of substantive due process to impose this new constitutional duty to notify parents of any issues affecting their children. *See Blau*, 401 F.3d at 395.

> **B.   Plaintiffs have not plausibly alleged that Rockford violated their fundamental right to direct their child's medical care.**

Plaintiffs alleged that Rockford's policy violated their "fundamental right to direct the medical care of their child." Plaintiffs argue that Rockford's use of F.M.'s preferred name and pronouns constituted a "psychosocial intervention for gender dysphoria sometimes called a social transition." (ECF No. 21, PageID.148; ECF No. 1, PageID.27). Rockford's use of the preferred name and pronouns was not medical care.

Plaintiffs argue that using a students' preferred name and pronouns when they are not experiencing gender dysphoria is equivalent to prescribing ADHD medication to a person without ADHD. But prescribing medication—which requires a medical degree—is completely different from calling a person by the name they have chosen. Because Plaintiffs have not alleged any facts supporting their assertion that Rockford provided "medical care," that conclusory allegation need not be taken as true. *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (finding that "naked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint") (cleaned up); *Foote v. Town of Ludlow*, No. CV 22-30041-MGM, 2022 WL 18356421, at *5 (D. Mass. Dec. 14, 2022) (stating that "conclusory statements describing the use of names and pronouns as medical treatment" are not "factual allegations" that need to be taken as true).

4

As multiple courts faced with this same argument have found, absent factual allegations that the school took action as part of a treatment plan for gender dysphoria (allegations which are not present here), simply addressing a student by their preferred name and pronouns is not medical treatment.  *See Foote*, 2022 WL 18356421, at *5; *Doe v. Delaware Valley Reg'l High Sch.*, No. CV2400107GCJBD, 2024 WL 706797, (D.N.J. Feb. 21, 2024) (finding parents unlikely to succeed on claim that using student's preferred names and pronouns, without other allegations of "treatment," implicated parental right to make medical decisions); *cf. T.F. v. Kettle Moraine Sch. Dist.*, No. 2021 CV 1650, 2023 WL 6544917 (Wis. Cir. Ct., Oct. 3, 2023) (the school's actions were taken after consultation with the student's therapist after the student had received medical treatment for gender dysphoria).

Contrary to Plaintiffs' argument, Plaintiffs allege no facts that Rockford "forced" their child to "undergo an unnecessary intervention behind her parents' back." (ECF No. 21, PageID.148).  Nor do Plaintiffs allege that Rockford counseled, pressured, or coerced F.M. into asking to use a preferred name or pronoun.  On the contrary, the complaint makes it clear that F.M. initiated the request.

Plaintiffs rely on *Kanuszewski v. Michigan Department of Health & Human Services*, 927 F.3d 396 (6th Cir. 2019), to argue that that the "touchstone" for deciding whether the state infringed on fundamental parental rights to direct medical care is the absence of informed parental consent, rather than coercion.  Plaintiffs are wrong.  *Kanuszewski* involved a Michigan law that required healthcare organizations to collect blood samples from newborns and then store the samples for future use, without parental consent.  Despite finding that there was no clearly established right of parents to "direct the healthcare of children," *Kanuszewski* held that the government violated the parents' fundamental rights by mandating the retention, sale, and storage

5

of the newborns' blood samples for future medical testing. *Id.* at 419. Indeed, as the Sixth Circuit recently explained, *Kanuszewski* involved a "program" of "compelled medical care." *See L.W. ex rel. Williams v. Skremetti*, 83 F.4th 460 (6th Cir. 2023). Plaintiffs make no such allegations here.

Confirming Plaintiffs' misplaced reliance on informed consent, the Sixth Circuit in *Doe v. Irwin* rejected exactly that right. *Irwin* involved parents' challenge to a state-run clinic that provided sex education and medical services to minors, including birth control. *Irwin*, 615 F.2d at 1163-64. The district court, in a later reversed opinion, concluded that "parents have a constitutionally protected right to participate in the very important decisions of their minor, unemancipated children as to whether or not to initiate sexual activity or to undertake the substantial medical risks of certain contraceptives." *Id.* at 1165. The district court also held that the parents were entitled to notice "particularly where the parent is prevented from being made aware of the actions of a state-run agency which facilitate a situation inimical to the values the parents are attempting to teach their children." *Id.* at 1166.

The Sixth Circuit reversed. After reviewing the Supreme Court cases defining "parental rights," the Sixth Circuit recognized "one fundamental difference between all the cited cases and the present one. In each of the Supreme Court cases, *the state was either requiring or prohibiting some activity*." *Id.* at 1168. (emphasis added). The Sixth Circuit therefore held that, because the state, acting through the clinic, "imposed no *compulsory* requirements or prohibitions" which affected the parents' rights, Plaintiffs did not allege violation of a fundamental parental right and strict scrutiny did not apply. *Id.* at 1168-69.

This is why Plaintiffs' attempt to distinguish *Irwin* on the basis that this case involves the public school setting rather than a clinic fails. These cases do not turn on the setting where the alleged violation occurs. They turn on whether the state compelled some activity. *See Anspach*,

6

503 F.3d at 264. Plaintiffs also rely on a Texas district court case, *Deanda v. Becerra*, 645 F. Supp. 3d 600 (N.D. Tex. 2022), that directly contradicts *Irwin*. The Sixth Circuit's decision in *Irwin* governs.

### C. Plaintiffs' claim of concealment does not alter the analysis.

Plaintiffs allege an independent violation of their parental rights based on allegations that Rockford concealed their actions from Plaintiffs. Plaintiffs' theory of concealment rests only on allegations that (1) for a period of two months, Rockford—*at the request of F.M.* and following state-issued guidance—used a preferred name and pronouns and did not immediately inform Plaintiffs, and (2) Rockford, on one occasion, used F.M.'s legal name in special education document.

Plaintiffs fail to acknowledge—which their own pleading admits—that Rockford published its policy on Rockford's website. (ECF No. 1, PageID.25 at ¶ 25). Plaintiffs were therefore on notice of the policy.

Contrary to Plaintiffs' argument, the district court in *Willey v. Sweetwater County School District*, 680 F. Supp. 3d 1250 (D. Wyo. 2023), merely found that the parents' fundamental rights could be violated by a school *policy* that required school officials to affirmatively lie to parents in response to specific requests about their children's gender identity, without considering whether honest disclosure would harm the student. The SBE Guidance adopted by Rockford, however, does not require such dishonesty and specifically recommends that the school consider the wellbeing of the student. (ECF No. 1-3, PageID.56).

**II.     Plaintiffs' Free Exercise Claim fails as a matter of law.**

   **A.     Plaintiffs do not plausibly alleged that Rockford's policy burdened their religious exercise.**

As Plaintiffs implicitly concede, "a violation of the Free Exercise Clause is predicated on coercion[.]" *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 223 (1963); *see Mozert v. Hawkins Cnty. Bd. of Educ.*, 827 F.2d 1058, 1066 (6th Cir. 1987) (quoting *Schempp*). Plaintiffs have not plausibly alleged that Rockford—either by respecting F.M.'s request to be called by a preferred name and pronouns or by not disclosing F.M.'s request to Plaintiffs for two months—forced the Meads to violate their religious beliefs.

Plaintiffs have not plausibly alleged that Rockford "conditioned their access to public education on forgoing their religious exercise." Taking their well-pleaded allegations as true, Plaintiffs have not alleged that Rockford has coerced them—directly or indirectly—to give up their religious beliefs. Plaintiffs have not been pressured to abandon their religious beliefs, or to engage in any conduct that violates their religious beliefs, or to refrain from teaching their religious beliefs to their child at home or elsewhere.

Plaintiffs have always remained free to maintain their own beliefs—and inculcate those beliefs in F.M. Although Plaintiffs allege that Rockford's decision to honor F.M.'s request is at odds with their religious beliefs, the First Amendment does not forbid Rockford from addressing students by their requested names and pronouns in a way that may undermine a parent's religious beliefs. *See Parker v. Hurley*, 514 F.3d 87, 105 (1st Cir. 2008) ("[T]he mere fact that a child is exposed on occasion in public school to a concept offensive to a parent's religious belief does not inhibit the parent from instructing the child differently."); *Mahmoud v. McKnight*, --F. Supp. 3d-- No. CV DLB-23-1380, 2023 WL 5487218, at *23 (D. Md. Aug. 24, 2023) ("Even if their

8

children's exposure to religiously offensive ideas makes the parents' efforts less likely to succeed, that does not amount to a government-imposed burden on their religious exercise.").

The Supreme Court has long held that the Free Exercise Clause does not "require the Government itself to behave in ways that the individual believes will further his or her spiritual development or that of his or her family." *Bowen v. Roy*, 476 U.S. 693, 699 (1986). Absent from Plaintiffs' complaint are any allegations that, by honoring F.M.'s request, Rockford has coerced the Meads to abandon their religious exercise. *See Yoder*, 406 U.S. at 219 (holding that unchallenged evidence "support[ed] the claim that enforcement of the State's requirement of compulsory formal education after the eighth grade would gravely endanger if not destroy the free exercise of respondents' religious beliefs").

Moreover, as Plaintiffs allege, Rockford's policy appeared on the school's website, so it was not in any way "hidden" from Plaintiffs. Plaintiffs had advance notice that Rockford's policy might differ from the religious instruction they planned to provide at home. (ECF No. 1, PageID.25 at ¶ 177).

Plaintiffs' allegations are far more akin to the allegations in *Mozert*. In *Mozert*, the plaintiffs—a group of parents and children—alleged that required reading in school textbooks "forced" them "to read school books which teach or inculcate values" in violation of their free exercise rights. *Mozert*, 827 F.2d at 1060-61. The plaintiffs alleged that the school had "effectively required that the student plaintiffs either read the offensive texts or give up their free public education." *Id.* at 1062. The Sixth Circuit rejected that claim, concluding: "The requirement that students read the assigned materials and attend reading classes, in the absence of a showing that this participation entailed affirmation or denial of a religious belief, or performance

9

or non-performance of a religious exercise or practice, does not place an unconstitutional burden on the students' free exercise of religion." *Id.* at 1065.

This case is even more attenuated. In *Mozert*, the Sixth Circuit rejected the plaintiff-students' free exercise claim. F.M. is not a party and alleges no violation of any of his constitutional rights. The Meads have not plausibly alleged that they, as the parents of the student who initiated the request, have been forced to "affirm[] or den[y] a religious belief" or that Rockford has compelled "performance or non-performance of a religious exercise or practice." Nothing in Plaintiffs' complaint suggests that Rockford's alleged actions regarding the SBE Guidance disabled Plaintiffs from instructing F.M. on their religious beliefs related to biological sex and gender.

Plaintiffs place great reliance on *Dahl v. Board of Trustees of Western Michigan University*, 15 F.4th 728, 730 (6th Cir. 2021), but *Dahl* is distinguishable. In *Dahl*, the Sixth Circuit determined that the *student*-plaintiffs were likely to succeed on the merits of their claim that the university's COVID vaccination policy forced them to choose between their religious beliefs or playing college sports. This case is not like *Dahl* because here there is no allegation that a student is being coerced in any manner. Rather, the policy guides the school when a student requests to be addressed by a different name or pronouns. And, unlike *Dahl*, where the university's vaccine policy coerced the student-athletes into violating their religious beliefs or giving up their ability to play college sports, there is no such coercion here. In no circumstance are the Meads required to adopt the preferred name and pronouns of their child, or do anything else, because of Rockford's policy. Rockford's policy in no way invades Plaintiffs' rights to instill their religious beliefs in their child, whether at home, at school, or elsewhere.

Taken to its logical conclusion, Plaintiffs are demanding a public education that conforms to their religious beliefs. That is not a public benefit that the Constitution provides.

### B. Even if Plaintiffs had alleged a burden, Rockford's policy is neutral and generally applicable.

Plaintiffs have not plausibly alleged that Rockford's policy is not neutral or generally applicable. *Country Mill Farms, LLC v. City of East Lansing*, No. 1:17-CV-487, 2023 WL 5345236 (W.D. Mich. Aug. 21, 2023), which Plaintiffs heavily rely on, is distinguishable.

In *Country Mill*, this Court concluded that the city violated the Free Exercise Clause by preventing the plaintiffs from participating as a farmer's market vendor because the plaintiffs did not rent their farm for same-sex weddings due to their religious commitments—which the city concluded violated its vendor guidelines. *Id.* at *5. In *Country Mill*, this Court held that the vendor guidelines violated the Constitution by giving the city discretion over who could participate as a vendor, as well as who was excused from complying with the vendor guidelines, which included adherence to the city's nondiscrimination policy. *Id.* at *5-6. In other words, the city had control over who was "opted-in" and who was "opted-out" as a vendor for the farmer's market.

*Country Mill*, *Fulton*, and the other cases dealing with nondiscrimination policies are distinguishable. Here, Rockford is not requiring Plaintiffs to adhere to a nondiscrimination policy—or any policy. Instead, Rockford's policy guides school officials in their response to a student's request for a preferred name and pronouns. In doing so, Rockford adopts a student-centered, case-by-case approach and counsels the careful application of the policy to each unique set of facts. The policy contains no exceptions and no opt-outs. Rockford's policy applies in every case, and it is neutral toward religion. *Country Mill* does not fit the facts here because the policy does not "prohibit[] religious conduct while permitting secular conduct." *Country Mill*, 2023 WL 5345236, at *5 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021)).

11

Plaintiffs' claim fails under *Fulton* for another fundamental reason: Plaintiffs have not pleaded that Rockford's alleged conduct was in any way motivated by Plaintiffs' sincerely held religious beliefs. Plaintiffs have not even alleged that Rockford was *aware* of Plaintiffs' religious beliefs. *Cf. Fulton*, 593 U.S. at 530-51; *Country Mill*, 2023 WL 5345236, at *4.

### C. The Sixth Circuit has rejected the hybrid rights theory.

This Court should also reject Plaintiffs' "hybrid rights" theory. As Plaintiffs acknowledge, the Sixth Circuit has rejected this theory: "[A]t least until the Supreme Court holds that legal standards under the Free Exercise Clause vary depending on whether other constitutional rights are implicated, we will not use a stricter legal standard than that used in *Smith* to evaluate generally applicable, exceptionless state regulations under the Free Exercise Clause." *Kissinger v. Bd. of Trustees of Ohio State Univ., Coll. of Veterinary Med.*, 5 F.3d 177, 180 (6th Cir. 1993); *Pleasant View Baptist Church v. Beshear*, 838 F. App'x 936, 940–41 (6th Cir. 2020) ("More than 27 years have passed since our ruling in *Kissinger*, and we have consistently rejected the 'hybrid-rights' theory without hesitation.") (Donald, J., *concurring*).

### III. Plaintiffs' Procedural Due Process claim fails as a matter of law.

Plaintiffs have not plausibly alleged that Rockford has deprived them of a protectible liberty interest. Plaintiffs have not alleged a deprivation of their fundamental rights. *See supra* Section I. In particular, the Sixth Circuit rejected the argument that a parent's liberty interest in directing the care, custody, and control of their children demands that the government notify the parents. *Irwin*, 615 F.2d at 1169 (holding that the government did not "infringe[] a constitutional right of the plaintiffs by its practice of distributing contraceptive devices and medication to unemancipated minors without notice to their parents"). Plaintiffs point to no case that suggests a liberty interest short of a fundamental parental right protected by the procedural due process clause.

12

Indeed, the cases Plaintiffs cite involve the highly distinguishable context of termination of parental rights or custody disputes. This claim fails.

### IV. Plaintiffs' claims fail under any standard of review.

Rockford has a compelling interest in cultivating a safe and supportive learning environment, not discriminating against transgender students, and protecting the privacy of its students. Plaintiffs do not even address Rockford's compelling interest in "cultivating and sustaining caring, supportive, and affirming learning environments[.]" (ECF No. 1-3, PageID.54).

Rockford's compelling interests are narrowly tailored to the circumstances Plaintiffs allege here—that Rockford, at F.M.'s request, used a preferred name and pronouns for two months without informing Plaintiffs. Rockford's response to F.M.'s request carefully accounts for Rockford's interest in a supportive learning environment *and* F.M.'s own privacy interests—this includes evaluating parental notification on a case-by-case basis.

Plaintiffs cite five state statutes requiring some form of parental disclosure under similar circumstances. (ECF No. 21, PageID.158-189). Those statutes have no bearing on tailoring. Nor do they account for the compelling interest a school has in protecting the privacy of its students. What's more, these state statutes demonstrate that the proper avenue for Plaintiffs is through the political process. It is not the province of the court to expand Constitution to reach Plaintiffs' claims. *See Blau*, 401 F.3d at 394 ("'By extending constitutional protection to an asserted right or liberty interest [the court], to a great extent place[s] the matter outside the arena of public opinion and legislative action,' . . . and as such 'the doctrine of judicial self-restraint requires [a court] to exercise the utmost care whenever [ ] asked to break new ground in this field.'" (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993) (alterations in *Blau*)).

Finally, contrary to Plaintiffs' assertion, Rockford's policy clears the low rational basis bar. The cases Plaintiffs cite are distinguishable because they involve teachers' own constitutional

claims. *Ricard v. USD 475 Geary Cnty.*, No. 522CV04015HLTGEB, 2022 WL 1471372 (D. Kan. May 9, 2022) (teacher alleged that school policy requiring her to use preferred pronouns violated her rights); *Mirabelli v. Olson*, No. 323CV00768BENWVG, 2023 WL 5976992, at *1 (S.D. Cal. Sept. 14, 2023) (same).

## Conclusion

Rockford asks this Court to dismiss Plaintiffs' complaint with prejudice.

                MILLER JOHNSON
                Attorneys for Defendants

Date: April 29, 2024       By: */s/ Amy E. Murphy*
                                   Catherine A. Tracey (P63161)
                                   Amy E. Murphy (P82369)
                                   Amanda Rauh-Bieri (P83615)
                                   45 Ottawa Ave SW, Suite 1100
                                   Grand Rapids, MI 49503
                                   (616) 831-1742
                                   traceyc@millerjohnson.com
                                   murphya@millerjohnson.com
                                   rauhbieria@millerjohnson.com