UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAN MEAD and JENNIFER MEAD,

        Plaintiffs,

v.

ROCKFORD PUBLIC SCHOOL DISTRICT and ROCKFORD PUBLIC SCHOOLS' BOARD OF EDUCATION,

        Defendants.

Case No. 1:23-cv-01313

Hon. Paul L. Maloney

Mag. Ray Kent

**Rockford's Response to Plaintiffs' Notice of Supplemental Authority**

In *Tennessee v. Cardona*, --F. Supp. 3d--, No. CV 2:24-072-DCR, 2024 WL 3019146 (E.D. Ky. June 17, 2024), "six states, an association of Christian educators, and one fifteen-year-old girl object[ed]" to the Department of Education's (DOE) rulemaking under Title IX. At the preliminary injunction stage, the Eastern District of Kentucky agreed with the plaintiffs, holding that they were likely to succeed on the merits of their claims that "the new rule contravenes the plain text of Title IX by redefining 'sex' to include gender identity, violates government employees' First Amendment rights, and is the result of arbitrary and capricious rulemaking." *Id.*

Although the plaintiffs in *Cardona* primarily challenged whether the DOE's final rule interpreting "on the basis of sex" in Title IX violated the Administrative Procedure Act, the state plaintiffs—but not the intervening association of Christian educators or the student—also alleged that the DOE's rulemaking violated fundamental parental rights. The district court agreed that the state plaintiffs were likely to succeed on this claim, concluding, with brief analysis, that the DOE's rule "unduly interferes" with parents' fundamental rights. *Id.* at *30.

1

In its notice of supplemental authority, the Meads point to the district court's preliminary injunction ruling in *Cardona* as support for their argument that their parental rights claims here are within the bounds of Supreme Court precedent. (Notice, ECF No. 26, PageID.195). This is not the case. To the contrary, there are good reasons why this Court should not give weight to the Eastern District of Kentucky's ruling in *Cardona*.

*First*, the *Cardona* ruling on parental rights relies on cases that arise in highly distinguishable contexts. The Eastern District of Kentucky cites *Barrett v. Steubenville City Schools*, 388 F.3d 967, 968 (6th Cir. 2004), but in *Barrett* a public school superintendent refused to give the plaintiff a full-time teaching contract unless his son attended the school, rather than a Catholic school. After the plaintiff transferred his son to the public school and then later removed him, the superintendent terminated his employment. *Id.* at 968-69. In concluding that the defendant superintendent was not entitled to qualified immunity, the Sixth Circuit explained: "[The plaintiff] made a decision to send his son to private school. [The plaintiff's] choice in directing his son's education is activity shielded by his constitutionally protected right of liberty." *Id.* at 973.

*Barrett* implicates a core tenet of a parent's fundamental rights with respect to the child's education—the right to choose *where* to educate one's child. *See Parker v. Hurley*, 514 F.3d 87, 101 (1st Cir. 2008) ("The schooling cases cited in *Troxel [v. Granville*, 530 U.S. 57 (2000)] 'evince the principle that the state cannot prevent parents from choosing a specific educational program.'" (citation omitted)); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005) (explaining that "parents may have a fundamental right to decide *whether* to send their child to a public school . . ." (emphasis in *Blau*)). But the fundamental parental right to choose whether to send a child to public school was not at issue in *Cardona*, and it is not at issue in this case. *Barrett*'s undisputed proposition that the "primary role of the parents in the upbringing of their children is

2

now established beyond debate as an enduring American tradition," standing alone, should have not have dictated the likelihood of success on the merits in *Cardona*—and it certainly does not resolve the complex issues before the Court in this case. *Barrett*, 388 F.3d at 972 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972)); *see also Cardona*, 2024 WL 3019146, at *31 (quoting *Barrett*).

*Smith v. Organization of Foster Families*, 431 U.S. 816 (1977), is likewise far afield from both *Cardona* and this case. In *Smith*, the Supreme Court held that New York's procedures for removing foster children from foster homes passed constitutional muster, concluding that the procedures were "adequate to protect whatever liberty interests [the foster parents] may have." *Id.* at 856. The Supreme Court declined to rule on whether the foster parents had a "constitutionally protected liberty interest." *Id.* at 847. Like *Barrett*, *Smith* sheds little light on the issues in either *Cardona* or this case. Neither does *Siefert v. Hamilton County*, 951 F.3d 753 (6th Cir. 2020), where the facts alleged and the parental right at stake were far different. In *Siefert*, the Sixth Circuit held only that the parent plaintiffs had properly pleaded a violation of their parental custody rights where the defendant hospital and doctors refused to release the plaintiffs' child from psychiatric care for nearly a month.

***Second***, the *Cardona* decision did not contend with any of the well-established limits on fundamental parental rights. *See Cardona*, 2024 WL 3019146, at *30-31. Instead, the district court concluded, without examination or qualification: "It follows that parents retain a constitutionally protected right to guide their own children on matters of identity, including the decision to adopt or reject various gender norms and behaviors." *Id.* at *31. Nothing in the district court's opinion supports this broad assertion.

To the contrary, it is well established that "the liberty of parents and guardians to direct the upbringing and education of children . . . is not an unqualified right." *Blau*, 401 F.3d at 395 (citing *Runyon v. McCrary*, 427 U.S. 160, 177 (1976)). But *Cardona*'s limited analysis treats the right as virtually absolute, and it does not address any of the well-recognized limits on fundamental parental rights—including, critically, the established constitutional rights of the minor and the rights of the school in ensuring the welfare of its students. (*See* Rockford Br., ECF No. 13, PageID.91-101; Rockford Reply, ECF No. 24, PageID.180-183 (discussing the outer bounds of fundamental parental rights)). These competing interests are complex, and *Cardona* does not even scratch the surface—particularly with respect to how these competing sets of constitutional rights apply to the facts as alleged in this case.

That the *Cardona* court conducted only a limited analysis of the state plaintiffs' fundamental parental rights claim is no surprise. Fundamental parental rights was not a core issue in *Cardona* (the intervening plaintiffs did not even bring this claim), and the depth of the preliminary injunction briefing as well as the district court's opinion reflect that. In fact, the district court did not even address the DOE's lead argument in response—that the state plaintiffs lack standing to assert a parental rights claim. *See* DOE Response, Dkt. No. 73, PageID.20-21 (citing *Haaland v. Brackeen*, 599 U.S. 255, 295 (2023)). And the state plaintiffs briefed this issue in a single paragraph, contending without analysis that the DOE's rulemaking violated parental rights. *See* State Plaintiffs' P.I. Br., Dkt. No. 19-1, PageID.870. Unlike in this case, neither the parties nor the district court squarely addressed this complex constitutional issue.

In contrast to *Cardona*, the issue of parental rights is at the center of the case, and it has been fully briefed. Nothing in *Cardona* sheds any meaningful light on whether the Meads have plausibly alleged that the Constitution required Rockford to immediately disclose to them their

4

child's request to be addressed by a different name and pronouns. For all the reasons fully articulated in Rockford's briefing, the Constitution imposes no such requirement.

## Conclusion

Rockford continues to ask this Court to dismiss Plaintiffs' complaint with prejudice.

                              MILLER JOHNSON
                              Attorneys for Defendants

Date: July 9, 2024         By: */s/ Amanda Rauh-Bieri*
                              Catherine A. Tracey (P63161)
                              Amy E. Murphy (P82369)
                              Amanda Rauh-Bieri (P83615)
                              45 Ottawa Ave SW, Suite 1100
                              Grand Rapids, MI 49503
                              (616) 831-1742
                              traceyc@millerjohnson.com
                              murphya@millerjohnson.com
                              rauhbieria@millerjohnson.com