UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAN MEAD and JENNIFER MEAD,

        Plaintiffs,

v.

ROCKFORD PUBLIC SCHOOL
DISTRICT and ROCKFORD PUBLIC
SCHOOLS' BOARD OF
EDUCATION,

        Defendants.

Case No. 1:23-cv-01313

Hon. Paul L. Maloney
Mag. Ray Kent

## **Defendants' Brief in Support of Their Motion to Compel Discovery**

## Introduction

Defendants ("Rockford") move for an order compelling Plaintiffs to provide complete responses to Rockford's First Set of Discovery Requests. Despite efforts to reach a resolution, Plaintiffs continue to assert boilerplate objections and withhold responsive information.

Plaintiffs allege that Rockford denied them their fundamental parental rights, contending that Rockford engaged in an unauthorized "psychosocial intervention" that interfered with their ability to direct G.M.'s healthcare. Yet, Plaintiffs continue to resist discovery related to G.M.'s medical records. Without knowing what medical care G.M. has received, Rockford cannot properly defend Plaintiffs' allegation that Rockford's actions "prevented [Plaintiffs] from . . . counseling G.M. about important decisions like whether she should socially transition at school, receive therapy related to gender confusion, or take some other course of action." (Compl. ¶ 274).

Plaintiffs also refuse to produce relevant communications and documents that go to the core of Plaintiffs' claims and Rockford's defenses. As it pleaded in its answer, Rockford reasonably believed that Plaintiffs were fully aware of G.M.'s request to be called by a different name and pronouns for a brief period at school. Plaintiffs' communications—both before and after they withdrew G.M. from Rockford—are relevant to Plaintiffs' knowledge and therefore to whether Rockford interfered with any of Plaintiffs' parental rights. Plaintiffs continue to improperly object to the bulk of Rockford's requests.

Plaintiffs' delay and outright refusal is prejudicing Rockford's defense. In addition, Rockford requires Plaintiffs to provide responsive information before it can

take Plaintiffs' depositions. Because the requested discovery is relevant, proportional, and directly tied to Plaintiffs' claims and Rockford's defenses, the Court should compel full responses.

## Background

### I.    Plaintiffs refuse to provide relevant discovery.

On March 11, 2026, Plaintiffs responded to Rockford's first set of discovery requests to Plaintiffs. (Ex. A: Pls.' Responses to Rockford's First Set of Discovery Requests). Plaintiffs' responses were full of boilerplate objections, and Plaintiffs broadly refused to provide relevant information and documents. In an attempt to resolve the discovery dispute, Rockford issued a deficiency letter and agreed to narrow multiple interrogatories and requests for production. (Ex. B: Defs.' Apr. 3, 2026, Deficiency Letter). On April 17, 2026, Plaintiffs responded. (Ex. C: Pls.' Apr. 17, 2026, Response Letter). Plaintiffs have not agreed to fully supplement their responses, and thus far, have not produced additional documents. *See id*. To date, Plaintiffs have produced only 433 pages in response to Defendants' requests, which primarily include reproductions of items that Rockford provided Plaintiffs in response to their FOIA request. In contrast, Defendants have produced 1,781 documents in response to Plaintiffs' requests.

## Argument

Rule 37(a)(3)(B) authorizes an order compelling responses where a party fails to answer interrogatories or produce documents. Discovery is permitted as to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be

3

discoverable. Plaintiffs must provide complete responses to Rockford's discovery requests.

### A.      Interrogatory No. 1: Witnesses

Revised Interrogatory No. 1 asks Plaintiffs to "identify . . . each person . . . whom you believe has information, knowledge, documents related to: G.M.'s gender identity, preferred names or pronouns, or communications with Plaintiff(s) related to gender identity or preferred names or pronouns; what Plaintiffs' complaint refers to as a "psychosocial intervention for gender dysphoria" or "social transition" (*see, e.g.*, Compl. ¶ 190); Plaintiffs decision to withdraw G.M. from Rockford and homeschool; and Plaintiffs' alleged damages . . . ." (Ex. B at 2-3).

Plaintiffs continue to improperly object to this request as overbroad. (Ex. C at 4). By taking issue with the phrase "related to," Plaintiffs ignore the narrowed and case-specific subject matter of the interrogatory. The request does not ask for the identity of all people with knowledge of abstract social issues; it seeks identification of individuals with knowledge of G.M.'s gender identity centrally at issue in this litigation, the alleged social transition at school, Plaintiffs' withdrawal decision, and Plaintiffs' damages. Initial disclosures do not satisfy this interrogatory because they do not require Plaintiffs to explain what knowledge each person possesses. Plaintiffs' objection does not allow them to defer the obligation to respond to deposition.

### B.      Interrogatory No. 2 and RFP No. 5: G.M.'s medical records

Plaintiffs object to producing G.M.'s medical records (Ex. A, Interrogatory No. 2 (asking Plaintiffs to "identify all medical health providers" that have treated G.M. "within the past give years"); Ex. A, RFP No.5 (requesting medical releases)). (Ex. C

at 2-4, 5, 10; Ex. A). G.M.'s medical records are directly relevant to Plaintiffs' claims and Rockford's defenses. Central to Plaintiffs' parental rights claim is their allegation that Rockford "interfered with and denied" their fundamental right to direct G.M.'s upbringing, education, and *healthcare*. (Compl. ¶ 273). Plaintiffs allege: "Defendants also interfered with and denied the Meads their fundamental right to direct the upbringing, education, and healthcare of their daughter by preventing them from counteracting Defendants' messages about sex and gender and from counseling her about important decisions like whether she should socially transition at school, receive therapy related to gender confusion, or take some other course of action." (*Id.* ¶ 274; *see also id.* ¶ 280 ("Defendants denied the Meads their fundamental right to direct their daughter's healthcare related to the important topic of gender confusion or gender dysphoria.")).

G.M.'s medical records are relevant to whether Plaintiffs were, in fact, "prevented from counteracting [Rockford's] messages about sex and gender," as they allege. If, for example, G.M.'s medical records reflect treatment or discussion on issues related to "gender confusion" or "gender dysphoria," those records would contradict Plaintiffs' allegations and undermine their argument that Rockford interfered with their right to direct G.M.'s healthcare or "prevent[ed]" them from "counteracting" any of Rockford's alleged messaging. (*See* Compl. ¶ 190 (alleging that "[g]ender dysphoria is a health diagnosis defined in the DSM-5…."; *id.* ¶ 274)). Plaintiffs cannot maintain their claim that Rockford interfered with their right to

direct G.M.'s healthcare without permitting discovery into the healthcare that G.M. has received for the past 5 years.

In their April 17 letter, Plaintiffs assert that "no one disputes that [Rockford] socially transitioned G.M. at school and hid its facilitation of her social transition." (Ex. C at 2). That is false. These are among the core contentions in this case, and Rockford unequivocally disputes that it "engaged in a psychosocial intervention" or that it hid a "social transition" from Plaintiffs. (*See* Answer, ECF No. 40, ¶¶ 211, 216)

In fact, central to Rockford's defenses is the fact that, during the short period of time during which Rockford honored G.M.'s request to be called by a different name and pronouns, Rockford reasonably believed that Plaintiffs were fully aware of G.M.'s request. (Answer, ECF No. 40, ¶¶ 4, 21, 76). For example, in March 2022, G.M. messaged the school counselor: "I asked my mom if she could use my new pronouns and she won't, she keeps saying that I'm her daughter and wont use they/them for me." (Ex. D: RPS_000001). The counselor responded, assuring G.M. that "She [Jennifer Mead] loves you!" and G.M. replied, "I know but she says that I'm always gonna be a female and it makes me feel bad." (*Id.*).

To this end, it is inappropriate for Plaintiffs to assert at this stage of the litigation that liability has been established and that Rockford "violated Plaintiffs' parental rights." (Ex. C at 2). In resisting discovery on this critical issue, Plaintiffs rely on the Supreme Court's order in *Mirabelli v. Bonta*, 146 S. Ct. 797 (2026). As explained in Rockford's response to Plaintiffs' motion for reconsideration (ECF No. 71), *Mirabelli* is a preliminary ruling concluding that the plaintiffs were likely to

6

succeed on merits of their claim that a different policy violated fundamental parental rights. In her concurring opinion, Justice Barrett emphasized that the Court's ruling was a preliminary assessment granting only "interim relief" rather than a full merits ruling, *id.* at 804-05 (Barrett, J., concurring); *see also id.* at 807–08 (Kagan, J., dissenting). Plaintiffs' reliance on *Mirabelli* to presume that Rockford's liability is a foregone conclusion is misplaced. Plaintiffs cannot use *Mirabelli* to resist relevant discovery into G.M.'s medical records.

Plaintiffs' citation to *Pollitt v. Mobay Chemical Corp.*, 95 F.R.D. 101 (S.D. Ohio 1982), is also misplaced. *Pollitt* does not reflect a categorical rule barring discovery of medical records; rather, it applied Rule 45's burden-balancing framework to an extraordinarily burdensome non-party subpoena seeking decades' worth of employee medical complaint records at an estimated cost exceeding $300,000. *Id.* at 105–06. The district court emphasized that the resisting party was a non-party, that the request required a search of thousands of files, and that plaintiffs offered only a conclusory assertion of relevance without attempting narrowing or cost-sharing. *Id.* at 105–07. None of those circumstances is present here. Rockford seeks targeted discovery from parties to the litigation that is directly relevant to Plaintiffs' claim that Rockford interfered with their right to direct G.M.'s healthcare.

Similarly, *Tumele v. Robert Scott Facility*, No. 06-CV-10605-DT, 2007 WL 4245404 (E.D. Mich. Nov. 29, 2007), involved a claim based on a specific physical injury, placing at issue the causation and treatment of the physical injury. *Id.* at *1. The relevance analysis turned on whether the records related to the existence,

7

causation, and treatment of those specific physical injuries. The court declined to compel production of separately maintained mental-health records, emphasizing that the plaintiff did not place her mental health at issue, did not seek emotional or psychological damages, and that defendants failed to make a particularized showing of relevance *of the mental health records* to the physical injury claims. *Id.* at \*2. Here, the very essence of Plaintiffs' claim implicates G.M.'s healthcare. *See also Mann v. Univ. of Cincinnati*, 824 F. Supp. 1190 (S.D. Ohio 1993) (rejecting ex parte discovery of a plaintiff's entire medical history where the relevance inquiry turned on alleged injury and damages and defendants lacked a reasonable basis to believe the full file was relevant).

Rockford is cognizant of the sensitivity of a minor's medical records and it does not make this request lightly. Plaintiffs, however, have put G.M.'s healthcare and medical wellbeing centrally at issue in this case. For example, Plaintiffs' complaint contains allegations regarding G.M.'s evaluation by a psychologist, including G.M.'s Autism Spectrum Disorder and Generalized Anxiety Disorder diagnoses, (Compl. ¶¶ 53-57, 108). For all the reasons discussed above, G.M.'s medical records are relevant to this case. Moreover, the parties' protective order (ECF No. 68) is sufficient to address confidentiality.

Finally, G.M.'s medical records are relevant to the merits of Plaintiffs' parental rights claim. The records are also relevant to damages. Although Plaintiffs have waived some damages, they continue to seek damages for "lost opportunity" to

8

direct the healthcare of G.M. The requested medical records additionally relevant and proportional to Plaintiffs' continued opportunities to direct G.M.'s healthcare.

### C.  Interrogatory No. 4: G.M.'s counselors, therapists, or advisors

Revised Interrogatory No. 4 states:

> Please identify any counselor, therapist, or advisor who G.M. has communicated with related to gender identity, preferred names or pronouns, or any of the allegations made in this lawsuit. For each person identified, state their name, address, telephone number, and email address; the date(s) of communication; and the form of communication (e.g., in person, virtual, telephone, written). "Counselor," "therapist," or "advisor" means anyone licensed to provide such services or anyone who holds themselves out as someone who provides such services. This definition is not limited to licensed professionals but includes anyone in a position of trust and/or authority regarding issues related to gender identity, social transition, or preferred names or pronouns. (Ex. B. at 3).

Plaintiffs continue to object to producing G.M.'s communications with counselors, advisors, family members, friends, and others, claiming irrelevance and overbreadth. (Ex. A, Pls.' Resp. to ROG No. 4; Ex. C at 5). Specifically, Plaintiffs object that "advisor" and "counselor" are overbroad, that post-withdrawal communications are irrelevant, and that this request seeks G.M.'s medical information. (*Id.*).

Plaintiffs' objections fail. Plaintiffs' claims that Rockford's alleged actions impeded their ability to exercise their fundamental parental rights depend on Rockford's alleged concealment and therefore Plaintiffs' lack of knowledge. (Compl. ¶¶ 1–9, 98–100, 260–86). The communications sought in Interrogatory No. 4 are therefore relevant. Plaintiffs cannot allege that Rockford hid critical information

while refusing to disclose communications that are relevant and proportional to Plaintiffs' awareness of the circumstances that they claim Rockford concealed.

Also, records related to G.M.'s communications with counselors, therapists, or advisors about gender identity, preferred names or pronouns, or the allegations made in the complaint are bear on whether Rockford's actions interfered with Plaintiffs' rights to direct G.M.'s upbringing and healthcare. For instance, records reflecting that Plaintiffs were not "prevent[ed]" from directing G.M.'s healthcare and upbringing on this issue, (Compl. ¶ 274), would undercut Plaintiffs' claims that Rockford engaged in unconstitutional interference. Plaintiffs have also publicly asserted in media appearances that Rockford's actions undermined their relationship with G.M. Rockford's request for these records is relevant and proportional.

Plaintiffs further assert that documents or communications created after they withdrew G.M. from Rockford in October 2022 are categorically irrelevant. (Ex. A, Pls.' Resp. to ROG No. 4; Ex. C at 1). This is incorrect for the same reason—communications that postdate G.M.'s departure from Rockford are relevant to whether Plaintiffs were in the dark about G.M.'s name and pronoun request. If Plaintiffs were not unaware, that bears directly on their allegations that Rockford's actions prevented them from directing G.M.'s care and upbringing. Later communications and statements may reflect what Plaintiffs knew earlier, how they understood Rockford's conduct at the time it occurred, and whether their narrative has evolved over time. (*See, e.g.,* Compl. ¶¶ 159–65 (meeting with principal post-withdrawal and explaining how they understood the prior events)). Plaintiffs

continue to publicly discuss the underlying events after withdrawal, including through media interviews and statements. (*See* Ex. A, Pls.' Resp. to ROG No. 4 and RFPs 2–4; 6). Plaintiffs may not impose this artificial temporal cutoff to avoid their discovery obligations.

Moreover, Plaintiffs' objection that "counselor" and "advisor" are not defined lacks basis. (Ex. C. at 6). In response to Plaintiffs' initial objections, Rockford further refined these terms. (Ex. B). Rockford's definitions are sufficient to put Plaintiffs on notice as to the information sought in this interrogatory.

### D.    Interrogatory No. 5: Plaintiffs' knowledge and communications

Interrogatory No. 5 states:

> Please identify any counselor, therapist, or advisor (excluding legal counsel) who either Plaintiff has communicated with related to gender identity, preferred names or pronouns, or any of the allegations made in this lawsuit. For each person identified, state their name, address, telephone number, and email address; the date(s) of communication; and the form of communication (e.g., in-person, virtual, telephone, written). (Ex. A at 8-9).

In response to Plaintiffs' objection, Rockford narrowed this request to state that "'counselor,' 'therapist,' or 'advisor' means anyone licensed to provide such services or anyone who holds themselves out a someone who provides such services. This definition is not limited to licensed professionals but includes anyone in a position of trust and/or authority regarding issues related to gender identity, social transition, or preferred names or pronouns." (Ex. B at 4). Plaintiffs nevertheless refuse to provide a complete response. (Ex. C at 6).

Plaintiffs state that they have not communicated with "any therapist related to gender identity or preferred names or pronouns," but refuse to answer the remainder of this request, objecting that it is irrelevant and disproportionate. (*Id.*). To the contrary, this information is targeted and relevant. Plaintiffs allege that Rockford denied them their parental rights, and Plaintiffs communications related to their allegations are relevant to Rockford's degree of interference—if any at all—with those alleged rights. Moreover, Plaintiffs' complaint, though lengthy, covers a relatively short period of time and contains circumscribed allegations. Requesting their communications with "counselors" or "advisors," as defined in Rockford's revised request, is within the scope of discovery.

### E.    Interrogatory No. 6: Social Media Accounts

Interrogatory No. 6 states:

> Please identify all social media accounts (including without limitation Facebook, X (Twitter), Snapchat, Instagram, TikTok, LinkedIn), messaging applications (including without limitation Facebook Messenger, Instagram Messenger, and WhatsApp, Signal, Telegram), email accounts, blogs, or any other similar electronic applications used by Plaintiffs and/or G. M. in the past five years. For each account or application, please include the username, display name, email address associated with the account, and account number associated with the account. Plaintiffs are reminded that deletion or destruction of relevant information is destruction of evidence and is prohibited. (Ex. A at 9-10).

Plaintiffs have agreed to provide only limited documents, which Rockford has yet to receive. (Ex. C at 6 (promising to review Dan Mead's Facebook and Instagram accounts and Jennifer Mead's Facebook, Instagram, and X accounts and produce responsive documents)). Plaintiffs have not agreed to provide G.M.'s social media

accounts. These are discoverable. As discussed above, G.M. communicated to Rockford staff that the Meads were aware of G.M.'s request to go by a different name and pronouns at school. G.M.'s social media accounts are within the scope of discovery. Moreover, Plaintiffs must identify the responsive social media accounts in response to Interrogatory No. 6. The fact that some social-media content may be publicly accessible does not relieve Plaintiffs of their obligation to identify their accounts or responsive content within their possession, custody, or control—which includes private, archived, or deleted material. *See Militante v. Banner Health*, No. CV-22-0352-PHX-DWL (JFM), 2023 BL 551645, at *7 (D. Ariz. Dec. 20, 2023) (availability from other sources does not render discovery disproportionate where the responding party has easier and more complete access to personal information).

### F.    Interrogatory No. 8: G.M.'s Homeschooling

Interrogatory No. 8, which seeks information concerning the nature, scope, and resources of G.M.'s homeschooling, is within the scope of discovery. (Ex. A). Plaintiffs take the highly unusual position that the school district should pay them damages for the homeschooling costs for G.M., along with alleged aggravation and inconvenience damages associated with homeschooling. (Compl. ¶¶ 167–69, 259, 286). The manner of G.M.'s homeschooling, including curriculum, structure, scheduling, and resources, goes directly to issues of causation, mitigation, and the reasonableness of Plaintiffs' claimed damages. To the extent that Plaintiffs contend these details can be explored at deposition, that position improperly defers a basic interrogatory response and does not excuse Plaintiffs' noncompliance under Rule 33. Plaintiffs have articulated no undue burden in responding to this request—and could

not, given that this information is squarely relevant and proportional to their damages request.

### G.    Interrogatory No. 10: Damages

Interrogatory No. 10 asks Plaintiffs to "[i]dentify each category of damages that Plaintiffs claim in this action, and for each category of damages, state the amount of damages claimed and describe the manner in which the damages were calculated." (Ex. A at 12). Plaintiffs seek aggravation and inconvenience damages but they refuse to provide the amount or the manner in which that amount was calculated for either category. (Ex. C at 7-8). *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015), on which Plaintiffs rely, does not support their argument that they do not have to provide this information. "Presumed damages" are "compensation for an injury that is likely to have occurred but difficult to establish." *Id.* (citation omitted). Plaintiffs' claim for inconvenience and aggravation damages are not so abstract that Plaintiffs do not have an obligation to state the amount they seek and the method of calculation.

### H.    RFP Nos. 3-4: Documents and Communications

In response to Plaintiffs' objections, Rockford narrowed Request for Production Nos. 3 and 4 as follows:

> Revised Request for Production No. 3: Please produce all documents and communications from August 1, 2020 to present (including, without limitation, emails, text messages, social media messages, social media posts, blog posts, diary entries, journal entries, calendar entries, handwritten or electronic notes, photographs, screenshots, videos, reports, letters, recordings of phone and/or video calls, recordings of interviews, newspaper articles, press releases, and/or news media recordings or videos) discussing or related G.M.'s gender identity, preferred names or pronouns, or communications with Plaintiff(s)

14

related to gender identity or preferred names or pronouns; what Plaintiffs' complaint refers to as a "psychosocial intervention for gender dysphoria" or "social transition" (*see, e.g.*, Compl. ¶ 190); Plaintiffs decision to withdraw G.M. from Rockford and homeschool; and Plaintiffs' alleged damages.

Revised Request for Production No. 4: Please produce all documents and communications from August 1, 2020 to present (including, without limitation, emails, text messages, social media messages, social media posts, blog posts, diary entries, journal entries, calendar entries, handwritten or electronic notes, photographs, screenshots, videos, reports, letters, recordings of phone and/or video calls, recordings of interviews, newspaper articles, press releases, and/or news media recordings or videos) related to Plaintiffs' communications regarding G.M. going by a name or pronouns other than G.M.'s birth name and pronouns, G.M.'s preferences for pronouns and/or name, including, but not limited to, documents and communications between either Plaintiff and G.M. (Ex. B).

Plaintiffs nevertheless contend that categories like "G.M.'s gender identity, G.M.'s preferred names or pronouns, Plaintiffs' communications related to gender identity or preferred names or pronouns" are too broad. (Ex. C at 9). There is no basis for this objection. These issues are central to Plaintiffs' claim that Rockford "interfered with and denied the Meads their fundamental right to direct the upbringing, education, and healthcare of their daughter about important topics like her identity as a young woman," and "prevent[ed] them from counteracting Defendants' messages about sex and gender and from counseling her about important decisions like whether she should socially transition at school, receive therapy related to gender confusion, or take some other course of action." (Compl. ¶¶ 273, 274). Plaintiffs' communications on the topics identified in RFP Nos. 3-4 are relevant and proportional to the degree—if any—that Rockford interfered with the Meads' rights.

15

Rockford's defense is prejudiced by Plaintiffs' repeated refusals to produce this information.

In addition, Plaintiffs argue that they need not compile interviews, media statements, or communications because they may be publicly available. That argument is incorrect. Rule 34 requires parties to produce responsive materials within their control. Plaintiffs cannot shift the burden to Rockford to identify and collect Plaintiffs' own communications from third-party sources. And to the extent that the information requested is publicly available, the burden on Rockford to compile the information is significantly higher than it is on Plaintiffs' because Plaintiffs know who they communicated with or provided interviews to, and are also uniquely situated to provide inquiries, emails, notes, drafts, and other documents related to interviews, media statements, or other communications which were not ultimately publicized. *See Militante v. Banner Health*, No. CV-22-0352-PHX-DWL (JFM), 2023 BL 551645, at *7.

## Conclusion

Plaintiffs' delay and outright refusal to produce responsive documents and information is prejudicing Rockford's defense. Rockford asks this Court to grant its motion to compel and compel Plaintiffs to provide complete responses.

MILLER JOHNSON
Attorneys for Defendants

Date:  April 22, 2026                    By: */s/ Amanda L. Rauh-Bieri*
                                         Catherine A. Tracey (P63161)
                                         Amy E. Murphy (P82369)
                                         Amanda Rauh-Bieri (P83615)
                                         45 Ottawa Ave SW, Suite 1100
                                         Grand Rapids, MI 49503
                                         (616) 831-1742
                                         traceyc@millerjohnson.com
                                         murphya@millerjohnson.com
                                         rauhbieria@millerjohnson.com