UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

_____

DAN MEAD and JENNIFER MEAD,

               Plaintiffs,

v.

ROCKFORD PUBLIC SCHOOL
DISTRICT and ROCKFORD PUBLIC
SCHOOLS' BOARD OF
EDUCATION,

               Defendants.

Case No. 1:23-cv-01313

Hon. Paul L. Maloney
Mag. Ray Kent

## **Defendants' Brief in Opposition to Plaintiffs' Motion to Quash Subpoena**

Plaintiffs, Dan and Jennifer Mead, sued Rockford Public School District, alleging that Rockford "actively conceal[ed]" from them information about their child G.M.'s request to be called by a different name and pronouns. The Meads allege that Rockford's alleged actions "prevent[ed] them from counteracting [Rockford's] messages about sex and gender" and denied them the right to direct G.M.'s upbringing "about important topics like her identity as a young woman." (Compl., ¶¶ 273, 274). But messages that G.M. sent to the school counselor suggest that the Meads were already aware of G.M.'s name and pronoun request—and the Meads were therefore not prevented from directing G.M.'s upbringing on issues regarding gender identity. G.M. is an important fact witness, and G.M.'s deposition is relevant to Rockford's defenses.

The Meads have not met their burden to show that deposing a key fact witness like G.M. poses an undue burden. G.M.'s testimony is relevant, and Rockford cannot

obtain it from any other source, particularly where, as here, G.M.'s school messages conflict with allegations in the Meads' complaint. Neither have the Meads met their burden to show that G.M's mental health diagnoses warrant the extraordinary step of prohibiting her testimony altogether. Rockford does not contest that G.M. faces mental health challenges, but the Meads provide insufficient support to establish that G.M.'s mental health issues alone should shield her from the deposition. The Meads present no medical evidence to support their argument that the deposition would be particularly harmful, and G.M.'s diagnoses alone do not provide the type of independent evidence courts have required to take the extraordinary step of barring a fact witness's deposition.

Moreover, the Meads have already ignored G.M.'s subpoena to testify. Rockford subpoenaed G.M.'s testimony on May 13, 2027. The Meads waited a week, until May 20, 2026, before they sought to quash G.M.'s deposition. (ECF No. 87). The Meads failed to produce G.M. for her deposition on May 27, 2026—even though there was no order from this Court excusing her deposition. Neither did the Meads provide notice to Rockford that they did not intend to produce G.M. on May 27, notwithstanding the absence of a court order. Rockford learned on the morning of May 27—after arranging a court reporter—that the Meads did not intend to comply with the subpoena.

Rockford asks this Court to deny the Meads' motion to quash G.M.'s deposition.

### Standard of Review

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Wichtman v. Martorello*, No. 2:19-MC-1, 2019 WL 244688, at \*2 (W.D. Mich. Jan. 17, 2019) (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d

2

389, 402 (6th Cir. 1998)). "[O]n a timely motion, the court 'must quash or modify a subpoena that . . . subjects a person to undue burden.'" *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)).

"Once a subpoena issues, the individual seeking to quash the subpoena bears the burden of proof." *Wichtman*, No. 2:19-MC-1, 2019 WL 244688, at *2 (citing *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011)). "In general, protective orders totally prohibiting a deposition should be rarely granted absent extraordinary circumstances." *In re Peyton*, No. 1:24-MC-0010, 2024 WL 4581247, at *2 (S.D. Ohio Oct. 25, 2024) (*Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 479 (S.D. Ohio 2014)).

## Argument

### I.   G.M.'s testimony is relevant to the Meads' claims and Rockford's defenses.

There is no merit to the Meads' argument that G.M.'s testimony is irrelevant. Far from it: the Meads' claims that Rockford denied them their fundamental parental rights center on Rockford's alleged actions with respect to G.M. And when this Court denied in part Rockford's motion to dismiss, it concluded that the Meads had plausibly alleged that Rockford denied them their parental rights by "plead[ing] that the District intentionally deceived them," "went beyond failing to notify them of their child's gender transition," and "took affirmative steps to deceive the Meads." (ECF No. 37, PageID.257-580 (citing the Meads' complaint); *see id.* PageID.258 ("Plaintiffs' allegations show some amount of coercion or interference from the District[.]")). The Meads plead that these alleged actions "prevent[ed] them" from directing G.M.'s

3

upbringing with respect to gender identity. (Compl., ¶¶ 273-274).

But evidence revealed during discovery paints a different picture. Far from taking "affirmative steps to deceive the Meads" or intentionally interfering with the Meads' parental rights, Rockford staff were under the reasonable belief that the Meads were fully aware of G.M.'s request to be called by a different name and pronouns. In March 2022, G.M. messaged the school counselor, relaying that she "came out to my mom," and stating that "I asked my mom if she could use my new pronouns and she won't, she keeps saying that I'm her daughter and wont use them/them for me." (Schoology Messages, ECF No. 73-4). Messages from G.M. indicate that the Meads were, in fact, providing guidance to G.M. on "important topics like her identity as a young woman." (Compl., ¶ 273).

So the Meads pivoted, asserting that their "claims hinge on whether the District sought the Meads' consent before socially transitioning their daughter—not what their daughter told the Meads." (Motion to Quash at 8). In support of this argument, the Meads rely solely on the Supreme Court's interim order in *Mirabelli v. Bonta*, 146 S. Ct. 797 (2026). But *Mirabelli* in no way conclusively resolves this legal question. As explained in Rockford's response to the Meads' motion for reconsideration (ECF No. 71), *Mirabelli* is a preliminary ruling that the plaintiffs in that case were likely to succeed on merits of their claim that a different policy violated fundamental parental rights. In her concurring opinion, Justice Barrett emphasized that the Court's ruling was a preliminary assessment granting only "interim relief" rather than a full merits ruling, *id.* at 804-05 (Barrett, J., concurring); *see also id.* at

4

807–08 (Kagan, J., dissenting).

Moreover, the California policies at issue in *Mirabelli* bear no resemblance to the policy that the Meads challenge here. California's policies broadly, and without exception, "prevent[ed] schools from telling [parents] about their children's efforts to engage in gender transitioning at school unless the children consent to parental notification." *Id*. at 800. As emphasized in Mirabelli's concurrence, California's non-disclosure policies applied "even if parents expressly ask for information about their child's gender identification." *Id*. at 804 (Barrett, J., concurring). The Meads cannot rely solely on *Mirabelli*—a preliminary ruling on a different policy and a different set of facts—to quash the deposition of a witness who is the central player in the Meads' complaint. G.M.'s testimony as to her conversations with Rockford employees and the Meads about her name and pronoun request are directly relevant to the Meads' allegation that Rockford "actively concealed" information from them.

## II.    G.M.'s testimony is not duplicative.

For many of the same reasons, G.M.'s testimony is not duplicative, and Rockford is not able to obtain the necessary information from other sources. This is not a basis to prevent Rockford from seeking testimony from G.M.

The Meads argue that G.M.'s testimony is "duplicative" because Rockford "can ask the Meads what G.M. told them." This is not how discovery works. The Meads cannot substitute their own testimony for the testimony of their 17-year-old child, especially when G.M.'s conduct is directly relevant to the Meads' constitutional claims. As noted, the Meads allege that they were "*prevented* . . . from counteracting Defendants' messages on sex and gender and counseling her about important

5

decisions like whether she should socially transition at school, receive therapy related to gender confusion, or take some other course of action." (*Id.* ¶ 274 (emphasis added)). But evidence from G.M.'s own communications with the school counselor contradicts these allegations. *See supra* Section I. Rockford is entitled to explore G.M.'s testimony on this case-critical fact.

Moreover, the Meads' argument that "[w]hen asked, the District could only come up with two topics on which it wants to question G.M." is misleading and lacks basis. Rockford is not required to provide the Meads with a full range of possible deposition topics prior to seeking the testimony of a key witness, and the Meads cite no authority to the contrary. Instead, in an effort to resolve this issue without need for motion practice, Rockford responded to the Meads' request for topics by offering two topics that Rockford may explore in the deposition of G.M. The two topics are by no means exhaustive; they were offered as examples to show that G.M.'s testimony is relevant. Regardless, both topics—what G.M. told Rockford employees and what G.M. told her parents—are highly relevant.

### III. The Meads cannot meet their burden to show that G.M.'s deposition would pose an undue burden.

The Meads bear the burden of establishing that this is the type of "extraordinary circumstance" that warrants "totally prohibiting [G.M.'s] deposition." *See In re Peyton*, 2024 WL 4581247, at *2. The Meads have not met that burden.

In support of their motion, the Meads attach the four-year-old Pine Rest report, which is cited in their complaint, diagnosing G.M. with "Autism Spectrum Disorder (without intellectual or language impairment), along with Generalized Anxiety

6

Disorder and Major Depressive Disorder." (Compl., ¶¶ 53-57; Mot. to Quash, Ex. 2). The Meads also include a declaration from Dan Mead that does not contain any independent medical evidence. (Mot. to Quash, Ex. 3).

Rockford is, and always has been, sensitive to G.M.'s mental health and will make reasonable accommodations, including breaks at appropriate intervals, during the deposition. But entirely prohibiting the deposition of a key fact witness like G.M. is an extraordinary and rarely granted measure. The Meads have not shown that G.M.'s mental health justifies withholding her directly relevant testimony from Rockford. The Meads cannot press their claims against Rockford in this public forum (and in multiple public interviews and press statements) and simultaneously cry foul when Rockford seeks to depose G.M.—the central witness in their claims against Rockford.

Rockford does not dispute that G.M. faces mental health challenges and has been diagnosed with the conditions listed in the Pine Rest Report from 2022. But her diagnosis alone—without more independent evidence that the deposition would be particularly detrimental to G.M.—is not enough to quash the deposition of a significant fact witness. After all, mental health issues are not uncommon, and a diagnosis alone is insufficient medical evidence to prohibit testimony from a key fact witness. *See Englar v. 41B Dist. Ct.*, No. 04-CV-73977, 2010 WL 5015343, at \*9 (E.D. Mich. Dec. 3, 2010) ("As long as a witness appreciates his duty to tell the truth, and is minimally capable of observing, recalling, and communicating events, his testimony should come in for whatever it is worth. It is then up to the opposing party

7

to dispute the witness' powers of apprehension, which well may be impaired by mental illness or other factors." (quoting *United States v. Phibbs*, 999 F.2d 1053, 1068 (6th Cir. 1993)); *see also Phibbs*, 999 F. 2d at 1068 ("[e]very person is competent to be a witness except as otherwise provided in these rules" (quoting Fed. R. Evid. 601)).

None of the cases the Meads cite support their argument. In *Williams v. County of San Diego*, No. 17CV00815MMAJLB, 2019 WL 5963969, at *9 (S.D. Cal. Nov. 13, 2019), the defendants sought testimony from a seven-year-old child about events that occurred when the child was two years old. The child's psychologist provided evidence of the detrimental effects of the deposition. *Id.* Here, G.M. is seventeen, and Rockford seeks to ask her about events that occurred when she was twelve and thirteen. The Meads have not provided any recent medical evidence, let alone medical evidence stating that the deposition would be damaging to G.M.

And *Flanagan v. Wyndham International Inc.*, 231 F.R.D. 98, 105 (D.D.C. 2005), actually supports Rockford's opposition to this motion. In *Flanagan*, the district court denied a motion to quash a minor's deposition: "Without independent evidence that S.G. will suffer psychological or other harm, S.G.'s conclusory statements are not sufficient for a total prohibition of the deposition."

A general, four-year-old mental health diagnosis and Mr. Mead's declaration do not constitute "independent evidence" that G.M. will "suffer psychological or other harm" as a result of the deposition. Although, unlike *Flanagan*, G.M. herself has not "granted interviews to several media organizations," the Meads have not hesitated to

discuss their internal family dynamics in the media.[1]

*Patel v. Kensol-Franklin, Inc.*, No. CIV.A. 3:14-1439, 2015 WL 5311469, at *4 (M.D. Pa. Sept. 11, 2015), has no bearing on G.M.'s deposition here. In *Patel*, a wrongful-death case, the district court concluded that the children's mother could "testify concerning how decedent's death affected her children to the stated extent permitted in a wrongful death action (i.e., regarding the value of the services decedent would have rendered his children if he had lived)[.]" Here, G.M. has relevant testimony to provide that cannot be obtained from the Meads. And the Meads acknowledge that in *Pen American Center Inc. v. Escambia County School Board*, No. 3:23CV10385/TKW/ZCB, 2024 WL 3831305, at *1-2 (N.D. Fla. July 22, 2024), the district court permitted the deposition of a seven-year-old plaintiff. Although G.M. is not party, G.M. is 17 years old and has relevant testimony as to her parents' claims against Rockford. G.M.'s nonparty status is not a sufficient reason to prohibit G.M.'s testimony.

By contrast, in *Allen v. Cam's Transport Co.*, No. 3:22-CV-403-KAC-DCP, 2024 WL 3093480, at *4 (E.D. Tenn. June 20, 2024), the plaintiff parents—relying on a doctor's note—sought to quash the deposition of their minor son, contending that the

---

[1]  https://www.detroitnews.com/story/opinion/2025/09/10/michigan-school-socially-transitioned-daughter-didnt-tell-us-east-rockford-mead-family/86058464007/?gnt-cfr=1&gca-cat=p&gca-uir=true&gca-epti=z1102xxp000250c000250e1102xxv005868d--45--b--45--&gca-ft=216&gca-ds=sophi ("Multiple times a day, she would ask us if we loved her. She'd been taught not to trust us — that we didn't understand her and wouldn't accept her, which of course is not true. But what really broke my heart is that she was led to believe she was broken.").

deposition would be "medically detrimental." The district court denied the motion, stating that "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Id.* (quoting *Fjellman v. Forest Hill Co-op.*, No. CIV.A. 06-CV-14470-D, 2007 WL 1806173, at *2 (E.D. Mich. June 21, 2007)); *see also id.* ("Protective orders prohibiting depositions are rarely granted.") (quoting *Dang ex rel. Dang v. Eslinger*, No. 6:14-CV-37, 2014 WL 3611324, at *2 (M.D. Fla. July 22, 2014)).

And in *Arassi v. Weber-Stephen Prods.* LLC, No. 13-CV-684, 2014 WL 1385336, at *2 (E.D. Wis. Apr. 9, 2014), the court permitted the depositions of a 10-year-old and 14-year-old child to proceed. The court explained that it had considered "the young ages of the children," "that litigation can be anxiety-inducing for laypersons, especially for children of a young age," "that the two children are presently receiving therapy," "the subject matter of the deposition," and "that the children are not parties to this complaint." *Id.* The court nevertheless denied the motion to quash, concluding that the plaintiffs failed to show "with specificity that deposing the children would be irreparably harmful to them." *Id.*

The same is true here, and the Meads have identified no authority that supports quashing G.M.'s deposition on the limited evidence they offer here. G.M. is a key fact witness who possesses relevant testimony as to her parents' claims against Rockford. Rockford has no other way of obtaining G.M.'s knowledge without deposing her. The Meads have not met their burden to show that G.M.'s deposition presents an undue burden such that this Court should take the extraordinary step of

10

preventing it entirely.

## Conclusion

Rockford asks this Court to deny the Meads' motion to quash G.M. deposition.


MILLER JOHNSON
Attorneys for Defendants

Date: June 3, 2026      By: */s/ Amanda L. Rauh-Bieri*
Catherine A. Tracey (P63161)
Amy E. Murphy (P82369)
Amanda L. Rauh-Bieri (P83615)
45 Ottawa Ave SW, Suite 1100
Grand Rapids, MI 49503
(616) 831-1742
traceyc@millerjohnson.com
murphya@millerjohnson.com
rauhbieria@millerjohnson.com