**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **DAN MEAD** and **JENNIFER MEAD**, | Case No. 1:23-cv-01313 |
| *Plaintiffs,* | |
| | Honorable Paul L. Maloney |
| v. | Magistrate Judge Ray Kent |
| **ROCKFORD PUBLIC SCHOOL DISTRICT**; **ROCKFORD PUBLIC SCHOOLS' BOARD OF EDUCATION**, | **Brief in Support of Plaintiffs' Motion to Set Status Conference** |
| *Defendants.* | |

## Introduction

Dan and Jennifer Mead seek a telephonic status conference to address the pretrial schedule and pending discovery motions. Rockford Public School District used these discovery disputes to adjourn the dispositive motions deadline, without the Meads having an opportunity to respond. But those discovery motions were filed months ago and are obviated. Since then, the parties held five more depositions, the Meads produced additional documents and responded to Rockford's second set of written discovery requests, and Rockford obtained extensive discovery on the issues raised in their discovery motions. Yet Rockford persists in its discovery motions to delay the case. Those motions are now duplicative, irrelevant, and will only serve to harm the minor child involved in this case.

Further, while the parties were engaged in discovery, the U.S. Supreme Court decided *Mirabelli v. Bonta*, 607 U.S. 492 (2026). *Mirabelli* holds that a school district's unconsented social transition of a student—exactly what Rockford officials confirmed in discovery that they did here—likely violates parents' rights under the

1

First and Fourteenth Amendments. *Id.* at 496–97; (Defs.' Answer to Pls.' Requests for Admission, ECF No. 87-1, PageID.660–661).

Discovery in this case closed nearly two months ago. This case has been pending for more than two and a half years, yet Rockford seeks to needlessly delay it further. The Meads are prepared to file their dispositive motion. So, Rockford's delay prejudices their ability to timely press their constitutional claims. The Meads seek a status conference to further update the court on the pending motions and discuss the case schedule. Plaintiffs have conferred with Rockford, and Rockford takes no position on the Meads' request for a status conference but opposes the Meads' position on the pending discovery motions.

To facilitate the Court's review, the Meads provide a snapshot of their discovery updates below but can provide more detail at a status conference.

## I.  Discovery has foreclosed Rockford's need for any additional evidence about the Meads' knowledge.

The bulk of Rockford's discovery requests focus on the Meads' knowledge of Rockford's facilitation of G.M.'s social transition at school. Setting aside the irrelevance of the Meads' knowledge (since Rockford admits that it never sought the Meads' consent), Rockford already got its answer in discovery: The Meads didn't know that Rockford was facilitating their daughter's social transition at school.

The parties have now completed all depositions in this case—which included five key witnesses deposed after Rockford filed its motion to compel. The testimony confirms, without exception, that the Meads did not know about their daughter's social transition at school—and no Rockford employee spoke with the Meads to verify their knowledge or obtain their consent. For example:

- Superintendent Steve Matthews—testifying as Rockford's 30(b)(6) witness—testified that he is not "aware of any evidence that a district

2

employee communicated with the Meads on G.'s preferred name or pronoun change." Ex. B, Matthews Tr. 37:23–38:1.

- East Rockford Middle School Principal Adam Burkholder testified that he "trust[s] that [the Meads] were not aware that G. was going by a preferred name" from "teachers at school." Ex. C, Burkholder Tr. 57:20–58:3.

- East Rockford counselor Erin Cole honored G.M.'s request to call G.M. by her preferred name and pronouns "right away" and never spoke to the Meads about "G's request to use a preferred name and pronoun at school." Ex. A, Cole Tr. 145:25–146:18. And she thought it "became obvious that [the Meads] did not know that she was using a preferred name and pronoun at school." Ex. A, Cole Tr. 188:4–18.

- East Rockford psychologist Heather Slater "never discussed the use of the name F by Rockford employees for G with Dan or Jennifer Mead" but instead referred to G.M. by her given name and female pronouns when she "communicated with the Meads." Ex. D, Slater Tr. 169:14–170:2.

The rest of Rockford's fact witnesses gave similar accounts, as did the Meads during their extensive depositions. Ex. E, Jennifer Mead Tr. 172:7–23; Ex. F, Dan Mead Tr. 188:20–190:16, 196:4–18.

Superintendent Matthews (Rockford's 30(b)(6) witness) testified that a March 2022 Schoology chat between Ms. Cole and G.M. held the only source for Rockford's belief that the Meads may have known that G.M. had requested to go by a preferred name or pronouns at school. Ex. B, Matthews Tr. 73:15–74:7; (March 2022 Schoology Messages, ECF No. 73-4, PageID.563). But that chat just says that G.M. asked her mom to use her "they/them" pronouns. (ECF No. 73-4, PageID.563). It says nothing about what was going on at school. And worse for Rockford, G.M. says

3

in the message to Ms. Cole that her mom "won't" agree to use "they/them" pronouns and "keeps saying that I'm her daughter." (*Id*.) Yet Ms. Cole and Rockford persisted in socially transitioning G.M. at school anyway.

When Superintendent Matthews was shown that Schoology chat, he conceded that the "message does not say that she made that request at school." Ex. B, Matthews Tr. 97:9-11. Again, the "only information about conversations at home" concerning G.M.'s gender identity came from "the Schoology message and a conversation [between Ms. Cole and G.M.] that was consistent with that Schoology message." Ex. A, Cole Tr. 166:12–18. Nothing hints that the Meads knew what Rockford was doing to their daughter—let alone consented to what it was doing. Yet Rockford insists that the Meads' knowledge is the primary reason why it needs all of G.M.'s medical records from the past five years, the identities of the Meads' and their daughter's therapists, the family's social media accounts, and a host of other documents and communications, (Defs.' Br. in Supp. of Mot. to Compel Disc., ECF No. 73, PageID.503, 507, 510, 513–514), as well as G.M.'s deposition, (Defs.' Br. in Opp'n to Pls.' Mot. to Quash Subpoena, ECF No. 96, PageID.721).

To be clear—the Meads possess *no documents* that suggest they knew anything about their daughter's gender identity struggles or Rockford's facilitation of their daughter's gender transition before receiving the REED report. Any further trolling for evidence about the Meads' knowledge—especially through invasive discovery into G.M.'s medical records or by deposing her—is harassment at best and will harm a minor child who is not a party to this case.

## II.    The Meads' testimony filled any perceived gaps.

Like the discovery requests pertaining to the Meads' knowledge, all of Rockford's remaining discovery needs have been filled or are otherwise irrelevant. This case is ready for summary judgment.

4

***G.M.'s Medical Records, G.M.'s Therapists, and G.M.'s Deposition.*** In addition to discerning the Meads' knowledge, Rockford has insisted that it needs G.M.'s medical records, her therapists' names, and her deposition so that it can determine whether the Meads were able to counteract the social transition that they did not know Rockford was facilitating at school. But the Supreme Court has twice rejected this type of mitigation theory because it "ma[kes] no difference" that parents could attempt to "counteract" the school's facilitation "at home." *Mahmoud v. Taylor*, 606 U.S. 522, 563 (2025); *see also Mirabelli*, 607 U.S. at 493–94 (discussing a school's gender transition against parents' instructions after daughter's gender dysphoria was revealed in a clinical setting). The unconsented facilitation is a constitutional violation no matter what the parents are able to do at home or outside school hours. What's more, the Meads are not seeking mental or emotional health damages for their daughter but waived them in an effort to prevent Rockford from making their daughter the pain point in this litigation.

The Meads also gave Rockford a full answer on these items anyway. The Meads provided extensive testimony on G.M.'s medical care and therapy. For example, Dan Mead testified that they never "sought an evaluation for gender dysphoria" for G.M. Ex. F, Dan Mead Tr. 103:4–7. G.M. has not undergone "any additional [clinical] mental health evaluations" since the "2022 Pine Rest report" that the Meads already produced to Rockford. Ex. F, Dan Mead Tr. 102:24–103:2. Jennifer Mead testified that neither of G.M.'s therapists communicated the content of G.M.'s therapy sessions to the Meads. Ex. E, Jennifer Mead Tr. 84:13–18. And the Meads testified to G.M.'s improvements since she has been in therapy. *See* Ex. F, Dan Mead Tr. 126:8–128:3.

So Rockford has no need for a non-party minor's irrelevant and private medical records or her deposition. Nothing in those records or her deposition could

change the undisputed facts which show that Rockford facilitated G.M.'s social transition at school without notifying the Meads or obtaining their consent.

*Homeschooling Records.* Rockford also demands that the Meads gather nearly four years' worth of homeschooling materials for "causation" and "damages"—even though the Meads already identified G.M.'s online homeschooling program (Acellus Academy) and its monthly cost ($79). (Pls.' Br. in Opp'n to Defs.' Mot. to Compel Disc., ECF No. 79, PageID.579–580). The program is online and so the Meads do not have traditional textbooks and documents to produce. But Dan Mead filled in that perceived gap by testifying extensively on G.M.'s homeschooling over the last four years. This included testimony about why the Meads chose Acellus, that the $79 monthly fee is their only cost, the subjects G.M. has taken, the algorithmic pace of the program, G.M.'s academic performance, Dan's daily supervision of her homeschooling, and G.M.'s target graduation date. Ex. F, Dan Mead Tr. 214:16–222:19. Nothing more is needed. The relatively small amount sought for the homeschool damages in this case does not justify the substantial burden of Rockford's discovery request and the attorney fees required to comply with it—fees which will ultimately be shifted to Rockford in this case.

*Social Media Accounts.* Rockford demands the identification of the Meads' and their daughter's social media accounts because those accounts *might* reveal the Meads' knowledge of G.M.'s social transition at school. (Pls.' Br. in Opp'n to Defs.' Mot. to Compel Disc., ECF No. 79, PageID.582-583). Despite Rockford failing to identify any connection between the two, the Meads foreclosed the need for these accounts anyway. Both Dan and Jennifer Mead answered deposition questions about their social media accounts, typical use, and searches for posts related to this case. Dan Mead testified that he searched his Facebook posts and that he did not find, and does not recall making, any posts related to this case—save for sharing the op-eds that the Meads already produced to Rockford. Ex. F, Dan Mead Tr. 35:1–

6

38:5. He does not post on Instagram, his only other personal account. Ex. F, Dan Mead Tr. 34:14–15. Jennifer Mead similarly testified that she searched her Facebook, Instagram, and X accounts for posts and messages related to this case and produced responsive documents. Ex. E, Jennifer Mead Tr. 30:1–8. Therefore, the Meads have produced the communications from their accounts that go to their contemporaneous knowledge of Rockford's facilitation of G.M.'s social transition. (*See* Pls.' Br. in Opp'n to Defs.' Mot. to Compel Disc., ECF 79, PageID.583–585). As to G.M.'s accounts, Dan Mead testified that he isn't aware of any social media accounts belonging to G.M. during her seventh-grade year—the height of her social transition. Ex. F, Dan Mead Tr. 152:7–17. No further invasion of G.M.'s or the Meads' privacy is warranted.

*Communications Related to this Case.* The Meads maintain that Rockford's request for all documents and communications "related to" the issues in this case is overbroad on its face. (Pls.' Br. in Opp'n to Defs.' Mot. to Compel Disc., ECF No. 79, PageID.584). The Meads have already produced all contemporaneous communications in their possession revealing they did not know what was going on at school. (*Id.* at PageID.585). They produced all public-facing communications that they directly participated in—interviews, op-eds, and testimony. (*Id.*). They produced all relevant communications with Rockford employees in their possession. (*Id.*). They had no "conversations with [their daughter] about her gender identity prior to taking home the REED evaluation." Ex. F, Dan Mead Tr. 196:14–18. And Rockford had nearly seven-hour depositions of both Dan and Jennifer Mead in which it was able to explore their communications. The Meads are not hiding the ball and have nothing relevant left to produce. So Rockford's request for more should be denied.

*Damages.* Rockford wants the Meads to calculate their presumed damages—specifically aggravation and inconvenience. (Pls.' Br. in Opp'n to Defs.' Mot. to

Compel Disc., ECF No. 79, PageID.583–584). The Meads maintain that presumed damages are "left to the sound discretion of the fact finder" because "[n]o formula exists to determine [the amount] with precision." *King v. Zamiara*, 788 F.3d 207, 215 (6th Cir. 2015) (quoting *Smith v. Heath*, 691 F.2d 220, 227 (6th Cir. 1982) (affirming a compensatory damages award of $5,000 to a plaintiff alleging that his apartment was unconstitutionally searched)). Nevertheless, Dan Mead testified on the aggravation and inconvenience stemming from homeschooling his daughter, Ex. F, Dan Mead Tr. 214:16–222:19, as well as his meetings with Rockford employees, *see* Ex. F, Dan Mead Tr. 188:8–193:25. That is all Rockford needs.

### III.    The Meads are prejudiced by any further delay.

The Meads filed this case over two and a half years ago. And in just six months, this case is set for trial. In the meantime, the parties will need to brief and the Court will need to resolve summary judgment motions—not to mention prepare for trial. That narrow window shrinks every day until these pending discovery motions are resolved, threatening to postpone the trial date.

The Meads finished their discovery before discovery closed on May 29. By contrast, Rockford filed its motion to compel just a month before discovery closed, served G.M.'s deposition subpoena two weeks before discovery closed, and took all of its depositions after discovery closed. *See Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 272 (6th Cir. 2021) ("The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." (citation omitted)). Rockford's delay need not prejudice the Meads any longer.

8

## Conclusion

The Meads request that the Court set a telephonic status conference to address updates on the pending discovery motions and adjust the pretrial schedule as needed.

Dated: July 17, 2026

Respectfully submitted,

*/s/ Katherine L. Anderson*

DAVID A. CORTMAN
Georgia Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road N.E.,
   Suite D1100
Lawrenceville, Georgia 30043
(770) 339-0774
dcortman@ADFlegal.org

KATHERINE L. ANDERSON
Arizona Bar No. 33104
HENRY FRAMPTON
South Carolina Bar No. 75413
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
kanderson@ADFlegal.org
hframpton@ADFlegal.org

JOHN J. BURSCH
Michigan Bar No. P57679
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org

NOEL W. STERETT
Illinois Bar No. 6292008
DALTON A. NICHOLS
Indiana Bar No. 37499-71
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
(571) 707-4655
nsterett@ADFlegal.org
dnichols@ADFlegal.org

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word limits in Local Civil Rule 7.3(b)(i) because it does not exceed 4,300 words. The word-processing software used to prepare this brief was Microsoft Word for Microsoft 365. According to the word-count feature of that software, excluding any case caption, cover sheets, table of contents, table of authorities, signature block, attachments, exhibits, and affidavits, it contains 2,357 words.

*/s/ Katherine L. Anderson*
KATHERINE L. ANDERSON
Arizona Bar No. 33104
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
kanderson@ADFlegal.org

*Counsel for Plaintiffs*

10

## CERTIFICATE OF SERVICE

I certify that on July 17, 2026, I caused this document to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record for all parties.

*/s/ Katherine L. Anderson*
KATHERINE L. ANDERSON
Arizona Bar No. 33104
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
kanderson@ADFlegal.org

*Counsel for Plaintiffs*