UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAN MEAD, et al.,

       Plaintiffs,

                                          Case No. 1:23-cv-1313

v.

                                          Hon. Paul L. Maloney

ROCKFORD PUBLIC SCHOOL
DISTRICT, et al.,

       Defendants.

_____/

## ORDER GRANTING MOTION FOR RECONSIDERATION

Dan and Jennifer Mead have a child, G.M., who attended a middle school in the Rockford Public School District.  The Meads contend that the District had policies that encouraged school staff to refer to students by their preferred names and gender pronouns, even without parental knowledge or consent. G.M. asked the school to refer to G.M. using a different name and gendered pronouns that did not match G.M.'s sex at birth.  The school followed its policy and complied with G.M.'s request.  The Meads discovered this situation, withdrew their child, and sued the District and the School Board.  The Meads allege that these policies interfere with the free exercise of their religion, among other causes of action.

Defendants filed a motion to dismiss which the court granted in part in August 2025. The court dismissed the free exercise claim.  ECF No. 37.  In March 2026, the United States Supreme Court issued an opinion in *Mirabelli v. Bonta*, 607 U.S. 492 (2026) (per curiam), a case involving similar facts and a free exercise claim.  Relying on *Mirabelli*, the Meads filed

a motion for reconsideration.  ECF No. 63.  The court agrees that *Mirabelli* calls into question the court's interpretation of the relevant law and will grant the motion to reconsider.

## I. BACKGROUND[1]

Plaintiffs Dan and Jennifer Mead believe that everyone is born with a "fixed biological sex" as a "gift from God."  ECF No. 1 Compl. ¶ 226.  They believe that it is harmful to "refer[] to a child using pronouns that are inconsistent with that child's biological sex" because those pronouns "communicate a message to and about the child that is untrue." *Id.* ¶ 228.  The Meads' child is biologically female and, consistent with their religious beliefs, the Meads refer to their child as their daughter, using female pronouns and a female name.

In the final months of seventh grade at Rockford Middle School, the Meads' child messaged a guidance counselor, requesting that teachers no longer use the name G.M. and instead use a male name, F.M.  School staff complied with the request, and teachers began to refer to the Meads' child using male pronouns and a male name.

The Meads allege that the District adopted a policy on gender identity based on guidance from the State Board of Education (SBE).  Compl. ¶ 177 PageID.25.  Under that guidance, when requested by either the parents or the student, "school staff should engage in reasonable and good faith efforts to address students by their chosen name and pronouns." ECF No. 1-3 SBE Guidance PageID.55.  The Guidance is based on the SBE's finding that transgender and gender-nonconforming students are more likely to be targeted for physical violence than their cisgender or gender-conforming peers and that "environments that

---

[1] The facts here are a summary of the Meads' allegations adapted to the legal question now before the Court.  For a more thorough account of the Meads' allegations, refer to the Court's previous order (ECF No. 37).

acknowledge and affirm a student's identity are protective factors that improve health and educational outcomes." *Id.* PageID.52. The Guidance instructs that disclosure about a student's gender identity to their parents, when the student has not come out the parents, should be made on a case-by-case basis. *Id.* PageID.55. The school did not tell the Meads about their child's request. Under a separate policy, any legal paperwork sent home to parents by the school had to refer to students by their legal name and gender.

The Meads, nevertheless, found out about the teachers' use of their child's preferred name and gender pronouns. They received notes from a teacher that referred to their child using a masculine name, F.M. After this revelation, the Meads removed their child from Rockford Public Schools.

## II. LEGAL STANDARD

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Under Rule 54(b), "any order or other decision" that "adjudicates fewer than all the claims" in a case "does not end the action" and "may be revised." Fed. R. Civ. P. 54(b). Courts may revise interlocutory orders when "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018) (citation modified).

## III. DISCUSSION

The First and Fourteenth Amendments forbid state governments, including public schools, from making any law "prohibiting the free exercise [of religion]." U.S. Const.

3

amend. I; *see Mahmoud v. Taylor*, 606 U.S. 522, 545 (2025) ("Government schools, like all government institutions, may not place unconstitutional burdens on religious exercise.")  In the typical case, a plaintiff pleads a free-exercise claim by alleging "that a government entity has burdened his sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022).  "Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." *Id.* at 526. Passing both tests triggers rational-basis review. *See Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021).  But even if a government restriction is neutral and generally applicable, it may still trigger strict scrutiny when the policy "substantially interfer[es] with the religious development" of a child. *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972).  Strict scrutiny is justified because policies that restrict a child's religious development "pose a very real threat of undermining the religious beliefs and practices that parents wish to instill in their children." *Mahmoud*, 606 U.S. at 543 (citation modified).

In its previous order, the court held that Defendants' policies did not substantially interfere with the religious development of the Meads' child for two reasons.  First, the policies did not compel either the Meads or their child to do or to believe anything.  The policies are internal guidelines for school staff.  Second, the policies in this case are unlike policies that the Supreme Court did violate a parent's free-exercise rights.  The District's disputed policies did not relate to attendance, did not compel action by the Meads, and did not involve instruction or school curriculum.  The Court then held that the policies here were neutral, generally applicable, and passed rational-basis review, and so the Meads' free-exercise claim was dismissed.

4

This court relied on the reasoning from a then recent unpublished decision issued by the Sixth Circuit, *Doe No.1 v. Bethel Local School District Board of Education*, No. 23-3740, 2025 WL 2453836 (6th Cir. Aug. 26, 2025).  In that case, parents sued a school district over its policy allowing a transgender student to use the communal restroom of their preferred gender.  *Id.* at *1-2.  The panel held that the policy did not trigger strict scrutiny outright because, unlike the policy in *Mahmoud,* the bathroom policy was neither a "curricular feature" nor did it require religious students to use communal restrooms.  *Id.* at *7.  The school also had single-occupancy bathrooms available for anyone to use.  *Id.*

As mentioned above, the Supreme Court issued a per curiam, non-merits opinion in *Mirabelli* on March 2, 2026.  *Mirabelli* involved school policies similar to the District's policies here.  When a student engaged in gender transitioning at school, the policy prevented school staff from telling the student's parents about their child's situation unless the student consented.  *Mirabelli,* 607 U.S. at 493.  The plaintiffs in *Mirabelli* included both parents and teachers.  The district court ultimately granted summary judgment for the plaintiffs and issued a permanent injunction.

On appeal, the Ninth Circuit stayed enforcement of the permanent injunction pending an appeal.  The court disagreed with the district court's analysis of the parents' substantive due process claim and their free exercise claim.  *Mirabelli v. Bonta,* No. 25-8056, 2026 WL 44874, at *3 (9th Cir. Jan. 5, 2026).  The court stated that its concerns with the substantive due process claim were sufficient to issue the stay without addressing the free exercise claim.  *id.* The court, nevertheless, briefly addressed the claim.  The Ninth Circuit disagreed with the district court's reliance on *Mahmoud.*  Citing *Bethel,* the court explained

5

that "*Mahmoud* has been described as a narrow decision focused on uniquely coercive 'curricular requirements.'" *Id.* The plaintiffs sought review in the Supreme Court of the stay of Ninth Circuit's stay of the district court's permanent injunction. The Supreme Court granted review as to the parent-plaintiffs. *Mirabelli,* 607 U.S. at 496.

The Supreme Court found that the parent-plaintiffs demonstrated a likelihood of success on the merits for the purpose of a stay pending appeal. *Id.* The Court found that "California's policies will likely not survive the strict scrutiny that *Mahmoud* demands." *Id.* In a concurrence joined by Chief Justice Roberts and Justice Kavanaugh, Justice Barrett wrote that the Ninth Circuit had "significantly misunderstood" *Mahmoud* by following the Sixth Circuit's approach in *Bethel. Id.* at 501 (J. Barret, concurring).

Plaintiffs' motion for reconsideration asks the court to consider the weight of two non-binding opinions: (1) an unpublished opinion issued by the Sixth Circuit and (2) a non-merits interim opinion issued by the United State Supreme Court. "It is well-established law in this circuit that unpublished cases are not binding precedent." *Bell v. Johnson,* 308 F.3d 594, 611 (6th Cir. 2002). The Sixth Circuit has offered some guidance regarding the use of its unpublished opinions. "Although our unpublished case law is valuable insofar as it is persuasive and correctly identified governing legal principles, when it fails to meet that standard" courts should "not hesitate" follow the correct law. *Twumasi-Ankrah v. Checkr, Inc.,* 954 F.3d 938, 944 (6th Cir. 2020). Similarly, interim orders issued by the Supreme Court "are not conclusive on the merits" but do "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle,* 145 S. Ct. 2653, 2654 (2025).

6

Plaintiffs have established a sufficient reason for this court to reconsider its prior opinion. Likely this court made a error of law by relying on the Sixth Circuit's reasoning that *Mahmoud* was a narrow and limited decision focused on curricular decisions. At least three Justices have indicated that *Mahmoud* should not be so interpreted. In addition, the court notes that *Mahmoud* and *Bethel* resolved free expression challenges arising from facts different from the facts here. In contrast, *Mirabelli* arose from a challenge to a substantially similar school district policy. Accordingly, the court finds the reasoning in *Mirabelli* more applicable than the reasoning in *Bethel* and *Mahmoud*. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) ("The law of precedent teaches that like cases should generally be treated alike, ....").

Like the policies at issue in *Mirabelli*, the policies here likely created a substantial burden on the Meads' free-exercise rights. The Meads share religious beliefs similar to the parents in *Mirabelli* about the permanency of biological sex and the fixed relationship between sex and gender. At the time of the alleged violation, the Meads' child was also around the same age (seventh and eighth grades) as one of the children in *Mirabelli* (eighth grade). And like the parents in *Mirabelli*, the Meads did not have an opportunity to opt their child out of Defendants' policies.

Defendants' policies therefore trigger strict scrutiny. To survive strict scrutiny, a government must demonstrate that its policy "advances interests of the highest order and is narrowly tailored to achieve those interests." *Fulton*, 593 U.S. at 541 (citation modified). In *Mirabelli*, the Court held that the school's policies would not likely satisfy either prong:

The State argues that its policies advance a compelling interest in student safety and privacy. But those policies cut out the primary protectors of children's best interests: their parents. *See Troxel v. Granville*, 530 U.S. 57, 68-69, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). California's policies also appear to fail the narrow-tailoring requirement. The State's interest in safety could be served by a policy that allows religious exemptions while precluding gender-identity disclosure to parents who would engage in abuse.

607 U.S. at 496-97.

Defendants do not give the court any reason to treat the policies here any differently. In their response, Defendants argue, once again, that the school's discretion to notify parents (in light of its responsibility to keep them informed) is narrowly tailored to meet their interest in promoting student safety and success. But school discretion here is only as narrowly tailored as the policies in *Mirabelli*: the policies do not factor in parents' views and, as a result, they "cut" parents out. *Id.* So, in light of *Mirabelli*, the Meads have stated a claim for a violation of the Free Exercise Clause in the First Amendment.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiffs Dan and Jennifer Mead's motion for reconsideration (ECF No. 63) and **VACATES** its previous order (ECF No. 15) with respect to Plaintiffs' free-exercise claim.

**IT IS SO ORDERED.**

Dated: August 7, 2026                              /s/ Paul L. Maloney
                                                   PAUL L. MALONEY
                                                   UNITED STATES DISTRICT JUDGE

8